73 N.J. Super. 306 (1962)
179 A.2d 765
HORACE W. BLANCK AND ANGELINE V. BLANCK, TRADING AS BLANCK'S LIQUOR STORE, AND THE SOUTH JERSEY RETAIL LIQUOR STORES ASSOCIATION, APPELLANTS,
v.
MAYOR AND BOROUGH COUNCIL OF MAGNOLIA, HARRY R. D'AMICO AND CATHERINE D'AMICO, TRADING AS D'AMICO LIQUOR STORE AND DIRECTOR OF DIVISION OF ALCOHOLIC BEVERAGE CONTROL, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1962.
Decided March 28, 1962.
*307 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Grover C. Richman, Jr., argued the cause for appellants (Messrs. Richman and Berry, attorneys).
Mr. Norman Heine argued the cause for respondents Harry R. D'Amico and Catherine D'Amico, trading as D'Amico Liquor Store.
Mr. Samuel B. Helfand, Deputy Attorney General, argued the cause for Division of Alcoholic Beverage Control (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by SULLIVAN, J.A.D.
This appeal grows out of the issuance of a plenary retail distribution liquor license by the Borough of Magnolia to Harry R. D'Amico and Catherine D'Amico for premises 200 South White Horse Pike, Magnolia, New Jersey.
In March 1940 the Borough of Magnolia adopted an ordinance limiting the number of liquor licenses within the borough to three plenary retail consumption licenses and one club license. The ordinance did not provide for any plenary retail distribution license. In October 1960, by *308 action of the borough council, the ordinance was amended so as to allow the issuance of one plenary retail distribution license in addition to the other licenses. Two applications for said license were made, one by Harry R. D'Amico and Catherine D'Amico, who proposed to erect a $30,000 building in the commercial zone for the operation of a liquor store, and the other by Roy C. Meyers, Jr., who proposed to use his existing residence as the liquor store and "probably anticipates building another building in the future for the liquor store." As heretofore noted, the license was issued to Harry R. D'Amico and Catherine D'Amico on November 7, 1960. The licensees have since constructed the building and have been operating the liquor store therein.
Appellants Horace W. Blanck and Angeline V. Blanck hold one of the plenary retail consumption licenses in the borough. This license includes the right to sell packaged goods. Appellant South Jersey Retail Liquor Stores Association is an unincorporated association consisting of holders of plenary retail distribution licenses in South Jersey.
Appellants appealed to the Director of the Division of Alcoholic Beverage Control from the issuance of the license to the D'Amicos. They charged, inter alia, that the amendatory ordinance under which the license was issued was invalid because of the self-interest of Harry R. D'Amico, who was alleged to have been a councilman and president of the borough council at the time the amendatory ordinance was adopted.
At the hearing in the Division the following facts were developed. Harry R. D'Amico had been a councilman of the Borough of Magnolia for a period of some ten years prior to August 1960, and during the summer of 1960 was president of the borough council. His brother, Samuel D'Amico, had been borough clerk since 1941.
In 1959 the borough council had considered amending its liquor ordinance to provide for a "liquor store," but nothing came of it. Early in the summer of 1960 inquiries were made by various people interested in putting a liquor store *309 in the borough. About the same time Councilman D'Amico had a discussion with Francis J. Scott, the borough mayor, presumably about amending the liquor ordinance. As a result of the discussion the mayor "knew that if the ordinance was amended that he [D'Amico] would apply for a liquor license." The mayor did not know "for sure whether he would apply." He "thought he would." The other councilmen testified that they were unaware of D'Amico's interest in obtaining a liquor license until after the amendment had been adopted.
The amendatory ordinance was introduced at an adjourned meeting held on August 24, 1960, and approved on first reading. Councilman D'Amico did not attend this meeting. Notice of the proposed amendment was published in the Camden Courier on September 23, 1960, with public hearing thereon scheduled for October 5, 1960.
The council met on September 7, 1960, which meeting was attended by Councilman D'Amico, who moved that the minutes of the regular and special meetings held in August be approved.
On October 1, 1960 Harry R. D'Amico submitted his resignation as councilman to the borough clerk. On October 5, 1960, at a meeting of the borough council, the amendment to the liquor ordinance was adopted, and at the same meeting the council accepted D'Amico's resignation as councilman. D'Amico did not attend this meeting. Notice of the adoption of the amendment was published in the Camden Courier on October 14, 1960. Harry and Catherine D'Amico's application for a license under the amendment to the ordinance was filed on October 7, 1960. As heretofore noted, one other application (Meyers) was also filed.
The Director found that the evidence did not support appellants' charge of self-interest. Appellants' other claims of error were also found to lack merit.
Appellants have appealed to this court from the Director's conclusions and order. The appeal makes two points: one, the amendatory ordinance is invalid because Harry R. *310 D'Amico, as president of the borough council at the time the amendment was adopted, had a personal and financial interest which conflicted with his public duty; two, since Harry R. D'Amico applied for the license less than 48 hours after he resigned as president of the borough council, the application should have been made directly to the Director of the Division of Alcoholic Beverage Control, as provided by R.S. 33:1-20.
The latter point will be considered first. By R.S. 33:1-20 it is provided that no liquor license shall be issued by any issuing authority to any member thereof, and that in any such case, application may be made to the Commissioner (Director) who may issue the license. This provision does not apply to the instant case. Harry R. D'Amico had resigned as councilman prior to applying for the license. True, the time interval was short, but the council did not issue a license to one of its members, so that the mandate of R.S. 33:1-20 was not disobeyed. Such circumstances would be pertinent to the charge of corruption or favoritism hereafter considered, but do not make out a violation of R.S. 33:1-20.
Appellants' other point is that the Director should have ruled that the amendatory ordinance was invalid because of Councilman D'Amico's obvious self-interest. In support of this argument appellants cite numerous cases where ordinances were declared to be invalid because of the self-interest of one or more of the municipal officials who participated in the passage of the ordinance. Pyatt v. Borough of Dunellen, 9 N.J. 548 (1952); Zell v. Borough of Roseland, 42 N.J. Super. 75 (App. Div. 1956); S & L Associates, Inc. v. Township of Washington, 61 N.J. Super. 312 (App. Div. 1960); McNamara v. Saddle River Borough, 64 N.J. Super. 426 (App. Div. 1960). However, in all of these cases the ordinance was directly attacked by a plenary court action and a judicial ruling made as to the invalidity of the ordinance. Here, appellants have not brought any action to have a judicial determination as to the validity of *311 the amendatory ordinance. Instead, they appealed to the Director of Alcoholic Beverage Control from the issuance of the license and asked the Director to declare the amendatory ordinance void.
We conclude that the Director does not have the power to make such ruling. The Alcoholic Beverage Control Law does vest the Director with broad powers to supervise and regulate the manufacture, distribution and sale of alcoholic beverages. Municipal bodies may by ordinance limit the number of licenses and the hours of sale, but appeal may be had to the Director, who may set aside, vacate, repeal or modify the limitation complained of. R.S. 33:1-41. This provision means exactly what it says. The Director "may * * * repeal the limitation complained of * * *." This does not empower the Director to repeal the ordinance, however. If a person wished to challenge a municipal liquor ordinance on the ground that some step in the statutory procedure for adopting the ordinance had been omitted, it seems clear that he would not be entitled to bring such issue before the Director but would have to seek a judicial ruling by plenary suit, the reason being that the validity of the limitation would not be the issue. So, too, in the instant case. Appellants are not really attacking the limitation as such. They are saying that the ordinance was adopted contrary to law, so that the limitation fixed by the ordinance must fall. However, this is not the situation provided for by R.S. 33:1-41.
In Phillipsburg v. Burnett, 125 N.J.L. 157, 161 (Sup. Ct. 1940), Justice Case in a dictum involving this precise issue said, "* * * the proposition that a state administrative officer may flatly repeal a municipal ordinance, solemnly passed in accordance with statutory authority contained within the immediate text, is rather startling." Justice Heher, in commenting on the scope of the powers of administrative agencies, said the following in Swede v. City of Clifton, 22 N.J. 303, 313 (1956):
*312 "The agency that must answer the pre-question whether somebody's marriage is valid does not have power to declare valid or annul marriages. It merely has the duty to treat as valid or invalid a marriage for the purpose of deciding another legal question that is properly before the agency, * * *."
The conclusion is that appellants' claim as to the invalidity of the amendatory ordinance because of Councilman D'Amico's alleged self-interest could only be determined by judicial ruling in a plenary suit. Such issue was not justiciable in the administrative proceeding and will not be considered by this court on appeal from the Director's conclusions and order. We make no ruling as to Councilman D'Amico's alleged self-interest or its effect on the validity of the amendatory ordinance.
There is no question but that the Director could and did consider all of the facts and circumstances surrounding the passage of the amendatory ordinance in determining whether or not the issuance of the license to the D'Amicos was the product of corruption or favoritism. The Director, however, concluded that the granting of the license was not a violation of the Alcoholic Beverage Control Law or the rules and regulations of the Division. He determined that no abuse of discretion in issuing the license had been shown, nor did it appear that the council's action was arbitrary or unreasonable. There is substantial evidence to support his determination. Hornauer v. Div. of Alcoholic Beverage Control, 40 N.J. Super. 501 (App. Div. 1956). There were only two applications for the license; the D'Amicos who proposed to erect a substantial building in the business area at the opposite end of the town from the existing broad package privilege license held by Angeline and Horace Blanck, and Roy C. Meyers, Jr., who proposed to use his existing residence as the liquor store, at least temporarily. This location was about 500 feet from the Blanck premises. Under these circumstances, there is nothing to support the charge of corruption or favoritism. *313 As between the two, the D'Amico application clearly presented the better situation.
We note that Meyers has not appealed the council's action. The present appellants are other liquor dealers in the area who really don't want any license to issue to anyone, whether to the D'Amicos or anybody else.
We see no basis for disturbing the Director's ultimate ruling.
Affirmed.