184 N.J. Super. 123 (1982)
445 A.2d 424
LEROY R. PURDY, JR., HIS WIFE, CATHLEEN M. PURDY AND SANDRA L. PURDY, AN INFANT BY HER GUARDIAN AD LITEM LEROY R. PURDY, JR., PLAINTIFFS-RESPONDENTS,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 17, 1981.
Decided April 2, 1982.
*125 Before Judges FRITZ, ARD and TRAUTWEIN.
Vincent J. Pancari, attorney for appellant.
Holmes and Alvarez, attorneys for respondents (Carmen H. Alvarez on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
The principal issue here involved is a narrow one to be decided on facts essentially undisputed. The question involved is easily stated: Does a no-contact accident causing injuries to the 19-year-old driver of a "dirt bike" being operated elsewhere than upon a public road, caused by the distracting effects of an automobile being operated upon a public road, come within the umbrella of automobile insurance personal injury protection, commonly called PIP, as "an accident involving an automobile" pursuant to N.J.S.A. 39:6A-4? In the extraordinary facts of this particular case, we incline to the view that it does.
*126 In this infancy of the law respecting the breadth of PIP coverage, the factual setting in each case is important. The personal injury plaintiff, Sandra L. Purdy, lived, apparently, in a rural area. She had been visiting her friend who lived next door in a home "[e]xactly four telephone poles away." They had been riding their motorcycles  plaintiff described hers as a "basic dirt bike"  through the fields in the vicinity. When it came time for her to return home, plaintiff rode on the grass at the side of the road. The path she chose was directly in line with the telephone poles three to four feet from the edge of the road. She testified that as she approached each pole she would go around it. In doing this, she chose to move toward the road side of the pole rather than toward the side of the pole away from the road. As she went around the second of the four poles she "noticed a car coming." What then happened appears from her testimony thusly:
... I passed the second one [pole], I was up to the second one when I realized there was a car coming and that the lights were really bright and I started just about to the third pole and the car was just about to me and another car had pulled out right behind it and the lights were really bright, and I just seen it swerve over towards me.
Her last recollection is her remembrance of putting her brakes on. She testified, "I was still on the grass and I remember seeing the one headlight right in front of me, and that's all I remember." There is no competent evidence whatsoever in the record that the car whose lights distracted plaintiff left the public highway or struck either plaintiff or her motorcycle. Answers to interrogatories indicate that the motorcycle collided with the telephone pole and that the automobile did not have contact with the motorcycle.
Our search really is for the intent of the Legislature when it mandated coverage for "an accident involving an automobile." Did it mean coverage for injuries to one not in an automobile and not upon a public road who was not struck by any automobile or by any object propelled by or from such automobile, in a situation where the automobile blamed was in no place it was not permitted to be and not physically involved *127 in any way with the accident? We think so, at least as far as members of the family of the named insured are concerned  a class of which plaintiff is a member  because there is no qualifying language in the statute with respect to the occurrence other than that there be an accident and that an automobile be involved. Here both those prerequisites were satisfied beyond any argument.
We have heretofore held the statute to be applicable in the case of an accidental occurrence where the victim was not in the automobile involved (nor had he been in that automobile or any other immediately prior to the accident), nor was the victim or the automobile on a public road, or any road for that matter. Government Emp. Ins. Co. v. Tolhurst, 146 N.J. Super. 285 (App. Div. 1977). A somewhat similar situation produced coverage in Newcomb Hospital v. Fountain, 141 N.J. Super. 291 (Law Div. 1976). While a motorcycle does not come within the definition of an automobile for purposes of the statute, N.J.S.A. 39:6A-2a; Bingham v. Home Indemnity Co., 146 N.J. Super. 166 (Law Div. 1976), we have also held coverage may not be denied simply because the injured party is riding a motorcycle so long as that person is a named insured or member of his family residing in the household of the named insured and is injured as the result of an accident involving an automobile, all as here. Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475 (App.Div. 1976). Accord, Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85 (1981). As Judge Thomas so aptly said in Harlan v. Fidelity & Cas. Co., 139 N.J. Super. 226 (Law Div. 1976):
... If the named insured or a member of his family is injured as a result of an accident involving an automobile, it makes no difference if the injured person was, at the time of the accident, riding in a car or on a bicycle, motorcycle, truck, snowmobile, horse, donkey or bus. Such is the plain language of the statute. [at 229]
Nor is it essential to coverage that the involvement of the automobile with the injured person include contact with the victim in the physical sense, as long as there is a causal nexus to some degree. In Vicari v. Nationwide Ins. Co., 174 N.J. Super. 463 (App.Div. 1980), certif. den. 85 N.J. 464 (1980), we determined *128 there was statutory coverage for the occupant of a vehicle not involved in an accident but stopped in a line of traffic on account of it, who was injured when he left the car in which he was riding to render assistance. A like result obtained in Gerber v. Allstate Ins. Co., 161 N.J. Super. 543 (Law Div. 1978), in which the actual accident was between two vehicles not qualifying under the statute, a motorcycle and a commercial vehicle. See Berg v. Ohio Cas. Ins. Co., 166 N.J. Super. 239 (Law Div. 1979).
It is clear beyond any doubt that the public policy of this State requires construction of insurance policies in a manner to provide the broadest range of protection to those for whose benefits the insurance is written. State Farm v. Zurich Am. Ins. Co., 62 N.J. 155, 168 (1973). It follows that statutory provisions regulating that insurance are susceptible to the same consideration. Vicari v. Nationwide Ins. Co., supra, 174 N.J. Super. at 468. However, we are confident that here we need not rely on that canon to produce the result we reach, for we are content that the plain meaning of the statute is clear. Borrowing again from the wisdom of Judge Thomas in Harlan v. Fidelity & Cas. Co., supra, we agree with him that, with respect to N.J.S.A. 39:6A-4,
... The Legislature is deemed to have intended what it said and the court may not construe a contrary concept. If such was not the Legislature's intent, it is up to that body to correct its own handiwork. [139 N.J. Super. at 229]
As Chief Justice Vanderbilt opined in Watt v. Franklin, 21 N.J. 274 (1956);
In every case involving the application of a statute, it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts as it finds them, Carley v. Liberty Hat Mfg. Co., 81 N.J.L. 502, 507 (E. & A. 1910). A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers. Such a statute is clear in its meaning and no one need look beyond the literal dictates of the words and phrases used for the true intent and purpose in its creation. But few statutes can boast of such clarity or stand that test through every inquiry, and the court must take the responsibility of determining in each case presented whether the particular statute, in its application to it, is clear and unambiguous. [at 277]
*129 We are satisfied that this statute, insofar as it relates to the claim under the circumstances of this case, is clear and unambiguous. Its wisdom is not for us. Dacunzo v. Edgye, 19 N.J. 443, 454 (1955).
Defendant also contends that the trial judge erred in granting plaintiff's motion for judgment at trial. It argues that there was no evidence that the vehicle whose headlights distracted plaintiff was a passenger vehicle; that plaintiff's conduct was such that "the jury could have reasonably inferred from all of the evidence that the accident was caused by the plaintiff's actions alone and accordingly was not an accident involving an automobile," and that there may have been a question of causation in the absence of corroborative evidence. These issues were not raised below in the context of being factual issues and so we will not consider them here. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Beyond this, the issue itself comes with bad grace from counsel who said, at the time this motion was decided:
MR. PANCARI: If it please the Court, in reviewing this matter last night and in attempting to suggest certain charges to Your Honor, I read the various cases that Miss Alvarez [counsel for plaintiff] had mentioned yesterday, most of which I was familiar with already before we started. I take issue with the fact that Gerber [Gerber v. Allstate Ins. Co., 161 N.J. Super. 543 (Law Div. 1978)] is controlling in this instance, but before I get to that, I don't know and I don't believe that at this point we've got a situation that a jury could decide anyway. I think we are at this point involved in what in truth and fact is a declaratory type of judgment, that should be decided by Your Honor in any event, and maybe we should have been there yesterday when I stipulated to the medical bills and the payment of those medical bills by the carrier in the event that coverage was found.
I think at that point, and if I would have thought a little bit more ahead, I would have suggested that Your Honor simply hear the matter without the jury, because at that point there was no factual issue for a jury to determine, and I thought about that last night and I still think that's the case now. I don't think a jury has anything to go by to determine the facts in this case. It's a matter of law, and that's what we're down to. [Emphasis supplied]
Finally, defendant urges that the trial judge erred in not admitting into evidence pertinent portions of the police report. We reject this argument for three reasons. First, it is no more clear to us than it was to the trial judge that this *130 hearsay report was competent evidence. Second, the admission or exclusion of proffered evidence is a matter which resides within the sound exercise of discretion by the trial judge, Dolan v. Newark Iron & Metal Co., 18 N.J. Super. 450, 455 (App.Div. 1952), and the exercise of that discretion will not ordinarily be disturbed unless there is a marked abuse of discretion. State v. Wise, 19 N.J. 59, 98 (1955). Reversal will follow only in cases of a clear abuse. Schweizer v. MacPhee, 130 N.J. Super. 123, 127 (App.Div. 1974). We find nothing close to an abuse of discretion in the matter before us. Third, even if this were error, we have no doubt respecting the proposition that that error had no capacity to produce an unjust result. In such a case the error is harmless and does not justify reversal. State v. Macon, 57 N.J. 325 (1971).
Affirmed. Costs will be taxed against defendant.